**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 76.176.50.60,<br><br>                Defendant. | Case No.: 3:26-cv-02087-H-VET<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**<br><br>**[ECF No. 4]** |

Before the Court is Plaintiff Strike 3 Holdings, LLC's ("Plaintiff") *Ex Parte* Application for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference ("Application"). ECF No. 4. No defendant has been named or served. For the reasons discussed below, the Court **GRANTS** Plaintiff's Application.

**I.     BACKGROUND**

On April 2, 2026, Plaintiff filed a Complaint against Defendant "John Doe," an alleged subscriber of Spectrum and assigned Internet Protocol ("IP") address 76.176.50.60. ECF No. 1 at ¶ 5. Plaintiff is the owner of numerous adult motion pictures, which Plaintiff distributes through adult websites and DVDs. *Id.* at ¶¶ 2–3. Plaintiff asserts that Defendant is committing "rampant and wholesale copyright infringement" by downloading and

1

distributing copies of Plaintiff's copyrighted motion pictures without authorization, using the BitTorrent file distribution network. *Id.* at ¶¶ 4, 17–49.

In the Application, Plaintiff seeks leave to conduct early discovery prior to the mandated Rule 26(f) conference to learn the Doe defendant's identity. ECF No. 4-1. Specifically, Plaintiff seeks leave to serve a Rule 45 third-party subpoena on Spectrum, the Internet Service Provider ("ISP") who leased the IP address belonging to Defendant John Doe. *Id.* at 7–8.[1] The proposed subpoena would require Spectrum to supply only "the true name and address of Defendant." *Id.* at 8. Additionally, Plaintiff represents to the Court that it will only use this information to prosecute the claims in its Complaint. *Id.*

## II.    LEGAL STANDARD

A party is generally not permitted to obtain discovery without a court order before the parties have conferred pursuant to Rule 26(f). Fed. R. Civ. P. 26(d)(1). "However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). In those circumstances, the Ninth Circuit recognizes that "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*; *see also Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (same). For this reason, courts allow limited discovery after a complaint is filed to permit a plaintiff to learn the identifying information necessary to serve a defendant. *See, e.g.*, *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999); *UMG Recordings, Inc. v. Doe*, No. C-08-3999-RMW, 2008 U.S. Dist. LEXIS 79700, at *4 (N.D. Cal. Aug. 29, 2008) (noting, in an infringement case, that "a plaintiff cannot have a discovery planning conference with an anonymous defendant[,]" thus,

---

[1]    Page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic case filing system or the PDF pagination, not the document's internal pagination.

2

3:26-cv-02087-H-VET

limited expedited discovery would "permit the [plaintiff] to identify John Doe and serve the defendant, permitting this case to go forward"). Further, courts "permit expedited discovery before the Rule 26(f) conference upon a showing of good cause." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (internal quotations omitted).

When considering a request for expedited discovery to uncover the identity of a defendant, the Court applies the following "limiting principles:" (1) "the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court;" (2) the plaintiff "should identify all previous steps taken to locate the elusive defendant," confirming that plaintiff made a good faith effort to identify and serve the defendant; and (3) the "plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss." *Columbia Ins*., 185 F.R.D. at 578–80. These factors ensure this unusual discovery procedure is employed only "in cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service" and "prevent use of this method to harass or intimidate." *Id.*

## III.   DISCUSSION

Plaintiff contends there is good cause for this Court to allow expedited discovery. ECF No. 4-1 at 11–17. For the reasons stated below, the Court agrees.

### A.    Identification of Doe Defendant with Sufficient Specificity

Courts in this circuit agree that "a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." *See 808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash*, No. 12-cv-186-MMA (RBB), 2012 U.S. Dist. LEXIS 62980, at *10 (S.D. Cal. May 4, 2012); *OpenMind Solutions, Inc. v. Does 1-39*, No. C-11-3311-MEJ, 2011 U.S. Dist. LEXIS 116552, at *8-10 (N.D. Cal. Oct. 7, 2011) (concluding

3

3:26-cv-02087-H-VET

that plaintiff satisfied the first factor by identifying the defendants' IP addresses and by tracing the IP addresses to a point of origin within the State of California); *Pink Lotus Entm't, LLC v. Does 1–46*, No. C-11-02263-HRL, 2011 U.S. Dist. LEXIS 65614, at *6-7 (N.D. Cal. June 21, 2011) (same). Other courts conclude that merely identifying the IP addresses on the day of the alleged infringement satisfies this factor. *808 Holdings*, 2012 U.S. Dist. LEXIS 6298, at *10-11 (collecting cases).

Here, Plaintiff identified the Doe defendant with sufficient specificity. First, Plaintiff provides a Declaration by Jorge Arco, an independent contractor hired by Plaintiff as an "Enterprise Architect." ECF No. 4-2, Ex. A ("Ex. A") at ¶ 12. Mr. Arco "was part of a team that developed the infringement detection system VXN Scan" ("VXN Scan") and the Cross Reference Tool, both of which Plaintiff "owns and uses to identify the IP addresses used" to infringe Plaintiff's movies via the BitTorrent protocol. Ex. A at ¶ 41. Mr. Arco currently participates in "the maintenance and evolution of VXN and Cross Reference Tool components." *Id.* Mr. Arco explains VXN Scan in detail, which involves, in part, the development of a proprietary BitTorrent client that emulates the behavior of a standard BitTorrent client by repeatedly downloading data pieces from peers within the BitTorrent network that are distributing Plaintiff's movies. *Id.* at ¶¶ 44–60.

Per Mr. Arco, another component of VXN Scan is the PCAP[2] Recorder / Capture Card, which allows Plaintiff to "record numerous infringing BitTorrent computer transactions in the form of PCAPs." *Id.* at ¶¶ 61–63; *see also* Declaration of Patrick Paige, ECF No. 4-2, Ex. B ("Ex. B") at ¶ 14 (explaining that "PCAP is a computer file containing captured or recorded data transmitted between network devices;" "it is a recording of network traffic"). The PCAPs show "particular IP addresses connecting to the Proprietary Client and sending pieces of a computer file (which contains an infringing copy of Plaintiff's works) to the Proprietary Client." Ex. A at ¶ 63; *see* Ex. B at ¶ 15. Not only does

---

[2] PCAP stands for "Packet Capture," a computer file containing captured or recorded data transmitted between network devices. Ex. A at ¶ 62.

4

a PCAP contain the IP addresses used in the network transaction, it also records the port number and BitTorrent client used to accomplish each transaction and the "Info Hash value that was used to obtain the transacted piece," which in turn "identifies the data that was shared in the recorded transaction." Ex. A at ¶¶ 65–66. The PCAP Capture Card records perfect copies of every network packet received by the Proprietary Client. *Id.* at ¶ 69. Although this Order touches only on two of the components of VXN Scan, Mr. Arco's 92-paragraph Declaration sets forth additional in-depth details of all six components of the system and the Cross Reference Tool, providing a thorough explanation of how the system reliably pinpoints the IP addresses used by individuals infringing Plaintiff's movies and verifies the infringement.

Second, Plaintiff also provides a declaration by Patrick Paige, a computer forensics expert retained by Plaintiff to analyze and retain forensic evidence captured by VXN Scan. Ex. B at ¶¶ 3, 12. Mr. Paige "received a PCAP from Strike 3 containing information relating to a transaction initiated on 02/21/2026 21:07:13 UTC involving IP address 76.176.50.60." *Id.* at ¶ 16. Based on his review, Mr. Paige confirms that the "PCAP is evidence of a recorded transaction with IP address 76.176.50.60 initiated at 02/21/2026 21:07:13 UTC" and "shows that within that transaction, IP address 76.176.50.60 uploaded a piece or pieces of a file corresponding to hash value C7877ECD2DB266B958D0D5253F61CBEFC2811F72 to VXN Scan," *i.e.*, a hash value that is unique to one of Plaintiff's movies. *Id.* at ¶¶ 13–19; *see also* ECF No. 1-2 (Exhibit A to the Complaint, listing the hash values of the 36 torrent files received by the Proprietary Client from the IP address 76.176.50.60).

Third, Plaintiff provides a declaration by Susan B. Stalzer, Plaintiff's employee. ECF No. 4-2 at Ex. C ("Ex. C"). Based on a side-by-side comparison with Plaintiff's original movies, Ms. Stalzer verifies that each digital file that the Proprietary Client received through its transactions with IP address 76.176.50.60 is a copy of one of Plaintiff's copyrighted works that is identical, strikingly similar, or substantially similar to the original work. *Id.* at ¶¶ 8–11; *see also* ECF No. 1-2.

5

Finally, Plaintiff provides a declaration by Emilie Kennedy, Plaintiff's in-house General Counsel. ECF No. 4-2 at Ex. D ("Ex. D"). Ms. Kennedy explains that after Plaintiff received infringement data from VXN Scan, identifying IP address 76.176.50.60 as infringing its works, the IP address was automatically input into Maxmind's Geolocation Database, which first traced the IP address to a location in San Diego, California. *Id.* at ¶¶ 4–5. Per Ms. Kennedy, Plaintiff subsequently repeated the trace through the Geolocation Database (prior to filing the Complaint and prior to filing her declaration), which again traced the IP address to San Diego, California, a location within this Court's jurisdiction. *Id.* at ¶¶ 6–7; *see* ECF No. 4-2 at 36. The Court is satisfied that these multiple geolocation traces are reliably accurate and support a finding that the Doe defendant is located in this District.

Based on the foregoing, the Court finds that Plaintiff identified the Doe defendant with sufficient specificity and seeks to sue a real person subject to the Court's jurisdiction. Moreover, by obtaining the identifying information for the IP address at issue, the discovery sought would likely enable Plaintiff to serve the Doe defendant.

**B.    Previous Attempts to Locate the Doe Defendant**

The Application also describes Plaintiff's efforts to identify, locate, and serve the Doe defendant. Plaintiff attempted to locate the Doe defendant by searching for the IP address using online search engines and other web search tools. ECF No. 4-1 at 14. Plaintiff also reviewed numerous sources of authority such as legislative reports, agency websites, informational technology guides, etc. regarding whether it is possible to identify such a defendant by other means, and extensively discussed this issue with its computer investigators and cyber security consultants. *Id*. Despite these diligent efforts, Plaintiff was unable to identify any means of obtaining the identity of Doe defendant other than through subpoenaing the information from the ISP. *Id*.; *see also* Ex. B at ¶ 28. Thus, the Court finds Plaintiff has shown it has made a good faith effort to identify and locate the Doe defendant before resorting to filing the instant Application.

3:26-cv-02087-H-VET

### C.   Whether Plaintiff's Complaint Can Withstand a Motion to Dismiss

Lastly, to establish that the Complaint could survive a motion to dismiss, Plaintiff must "make some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act." *Columbia Ins.*, 185 F.R.D. at 580; *see also* Fed. R. Civ. P. 12(b). To present a prima facie case of copyright infringement, Plaintiff must show: (1) ownership of a valid copyright; and (2) that Defendant violated the copyright owner's exclusive rights under the Copyright Act. *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1071 (9th Cir. 2021). A prima facie case of direct copyright infringement must also show causation by the Defendant. *Id.* at 1080.

Here, the Complaint alleges that Plaintiff owns a valid copyright in the works at issue, which are registered with the United States Copyright Office. *See* ECF No. 1 at ¶¶ 43, 44, 46.[3] Ms. Stalzer attests that she reviewed the files correlating to the hashes identified in Exhibit A to the Complaint and confirmed that they are "identical, strikingly similar or substantially similar" to Strike 3's original copyrighted Works. Ex. C at ¶¶ 7–11; *see* ECF No. 1 at ¶¶ 34–35. Plaintiff's Complaint also alleges Doe defendant used BitTorrent to copy and distribute the copyrighted works without authorization, and that the infringement was continuous and ongoing. ECF No. 1 at ¶¶ 4, 19–30, 33–36, 45–46. Thus, Plaintiff's Complaint has stated a claim for copyright infringement against the Doe defendant. Additionally, Plaintiff has alleged sufficient facts to show it could withstand a motion to dismiss for lack of personal jurisdiction or a motion for improper venue because Plaintiff traced the IP address at issue to this District. Further, Mr. Paige declares that based on his experience in similar cases, the ISP, Spectrum, is the only entity that can correlate the IP

---

[3] Exhibit A to the Complaint, which shows the hash values of the purportedly infringing movies downloaded from IP address 76.176.50.60, also contains the United States Copyright Office registration information of the works that correspond with those hash files. ECF No. 1-2.

address 76.176.50.60 to its subscriber to pinpoint the Doe defendant's identity. Ex. B at ¶ 28.

Accordingly, coupled with the information provided by Mr. Arco and Mr. Paige in their respective declarations, the Court is satisfied that Plaintiff's Complaint would survive a motion to dismiss.

**IV.   CONCLUSION**

For the reasons set forth above, and for good cause shown, the Court **GRANTS** Plaintiff's Application. ECF No. 4. However, the Court is cognizant of the potential embarrassment of being identified in this type of case and "shares the growing concern about unscrupulous tactics used by certain plaintiffs, especially in the adult film industry, to shake down the owners of IP addresses." *Malibu Media, LLC v. Does 1-5*, No. 12-Civ-2950-JPO, 2012 U.S. Dist. LEXIS 77469, at *2 (S.D.N.Y. June 1, 2012). Anticipating and sharing these concerns, Plaintiff invites the Court to issue a protective order establishing procedural safeguards if the Court finds such procedures appropriate. ECF No. 4-1 at 18. Accordingly, the Court **ORDERS** as follows:

1.      Plaintiff **SHALL** attach a copy of this Order to any Rule 45 subpoena.

2.      Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to provide Plaintiff with **only** the true name and address of the subscriber to whom the ISP assigned IP address 76.176.50.60, as set forth on Exhibit A to the Complaint. The ISP is **not** to release the subscriber's telephone number or email address.

3.      Within fourteen (14) calendar days after service of the subpoena, the ISP **SHALL** notify the subscriber that his or her identity has been subpoenaed by Plaintiff. The ISP **must** also provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.

4.      The subscriber whose identity has been subpoenaed shall have **thirty (30) calendar days from the date of such notice** to challenge the disclosure of his or her name and address by filing an appropriate pleading with this Court contesting the subpoena. A subscriber who moves to quash or modify the subpoena may proceed anonymously as

3:26-cv-02087-H-VET

"John Doe" or "Jane Doe," and shall remain anonymous until the Court orders that the identifying information may be released.

5.    If the ISP wishes to move to quash the subpoena, it shall do so before the return date of the subpoena. The return date of the subpoena must allow for at least forty-five (45) days from service to production. If a motion to quash or other challenge is brought, the ISP shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge.

6.    Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on the ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint. If the subscriber wishes to proceed anonymously, Plaintiff may not release any identifying information without a court order allowing the release of the information.

**IT IS SO ORDERED.**

Dated: April 29, 2026

_____
Honorable Valerie E. Torres
United States Magistrate Judge

3:26-cv-02087-H-VET